Richard D. McCune [Bar No. No.132124]
rdm@mccunelawgroup.com
Michele M. Vercoski [Bar No. 244010]
mmv@mccunelawgroup.com
Joshua A. Genzuk [Bar No. 322622]
jag@mccunelawgroup.com
Yasmin N. Younessi [Bar No. 331327]
ynv@mccunelawgroup.com
**MCCUNE LAW GROUP, APC**
18565 Jamboree Road, Ste. 550
Irvine, CA  92612
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| DANIEL MERAZ, ERIC ASHCRAFT, and SOULMEX, LLC, individually and on behalf of all others similarly situated, <br>      *Plaintiffs,* <br>   v. <br> LINEAGE LOGISTICS HOLDINGS, LLC; CHILL BUILD LOS ANGELES I, LLC; LOS PALOS STREET OPERATING, LLC; PEARCE SERVICES, LLC; and DOES 1-50, inclusive, <br>      *Defendants.* | Case No.: 2:26-cv-7375 <br><br> **CLASS ACTION COMPLAINT FOR:** <br> 1.  NEGLIGENCE; <br> 2.  NEGLIGENCE PER SE; <br> 3.  PREMISES LIABILITY; <br> 4.  TRESPASS; <br> 5.  PRIVATE NUISANCE; <br> 6.  PUBLIC NUISANCE; <br> 7.  STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY; AND <br> 8.  MEDICAL MONITORING <br><br> **DEMAND FOR JURY TRIAL** |

-1-

COMPLAINT FOR MONETARY DAMAGES

## NATURE OF THE ACTION

1. This is a class action on behalf of residents, property owners, and businesses in the greater Los Angeles area harmed by a massive industrial fire that broke out on June 17, 2026, at a cold-storage warehouse located at 1400 South Los Palos Street, Los Angeles, California 90023 (the "Facility"), in the Boyle Heights neighborhood. The fire burned for approximately a week, releasing toxic gases and particulate matter across central Los Angeles County, the San Gabriel Valley, the East San Fernando Valley, and Northwest San Bernardino Valley.

2. Defendant Chill Build Los Angeles I, LLC ("Chill Build") owns the building housing the Facility. Defendant Lineage Logistics Holdings, LLC ("Lineage") occupies the Facility as tenant-operator, running a cold-storage and blast-freezing business that depends on an industrial ammonia refrigeration system. Defendant Los Palos Street Operating, LLC ("Los Palos"), a subsidiary of Altus Power, Inc., owns and operates the rooftop solar array installed across substantially all of the Facility's 500,000-square-foot roof. Defendant Pearce Services, LLC ("Pearce"), a subsidiary of CBRE Group, Inc., is the contractor Los Palos engaged to test and service that array, and is believed to have been performing that testing when the fire ignited.

3. Lineage has publicly acknowledged that it is "the tenant-operator of the warehouse building and lease[s] the roof to a third-party solar company, which is responsible for operating and maintaining the array," and that it "believe[s] the fire originated on the roof . . . while the company's subcontractors were servicing the solar array" and "started on the roof when the owner of the solar array, Altus Power, was doing tests."

4. The fire released a mixture of hazardous substances into a densely populated urban community, including ammonia from the Facility's industrial refrigeration system, hydrogen fluoride generated by burning lithium-ion batteries (detected by the Los Angeles Fire Department ("LAFD")), and additional toxic combustion byproducts from the Facility's dense polyurethane foam insulation. Fine particulate matter (PM2.5) reached

-2-

"Very Unhealthy" air-quality index levels across wide portions of Los Angeles County and neighboring communities.

5.     The City of Los Angeles and the State of California each declared a state of emergency. The South Coast Air Quality Management District ("SCAQMD") issued particle-pollution advisories — extended repeatedly as the fire continued to burn — covering central Los Angeles County, the San Gabriel Valley, the East San Fernando Valley, and Northwest San Bernardino Valley, and local authorities ordered residents in the immediate vicinity of the Facility to shelter in place. Thousands of residents reported throat and eye irritation, headaches, and difficulty breathing, and businesses throughout the affected area — including Plaintiff SoulMex, LLC's mobile food operation — were forced to suspend operations, some for weeks. A prior fire involving the same rooftop solar installation occurred at the Facility in 2024, placing every Defendant on actual notice of this specific fire hazard well before June 17, 2026.

## THE PARTIES

### *Plaintiffs*

6.     Plaintiff Daniel Meraz is an individual who resides on Los Palos Street, Los Angeles, California, in the Boyle Heights neighborhood and within blocks of the Facility, within the geographic area affected by the shelter-in-place order, the SCAQMD advisories, and the toxic smoke, soot, and airborne chemical particulates released by the fire. As a direct result of the fire, Mr. Meraz and members of his household were required to shelter in place and suffered adverse health effects, including difficulty breathing, headaches, and sleep disruption, for which Mr. Meraz sought medical treatment. Mr. Meraz further suffered loss of use and enjoyment of his home and other damages described herein. Plaintiff Meraz brings this action individually and as the proposed representative of the Resident Class defined below. Plaintiff Meraz is a citizen of the State of California.

7.     Plaintiff Eric Ashcraft is an individual who resides on Saybrook Avenue, East Los Angeles, California 90022, within the geographic area affected by the fire's toxic smoke, ash, and airborne chemical particulates. Mr. Ashcraft is also the owner and sole

COMPLAINT FOR MONETARY DAMAGES

member of Plaintiff SoulMex, LLC, a gourmet food truck business located in Boyle Heights. As a direct result of the fire, Mr. Ashcraft was exposed to smoke, ash, and chemical odors and residue at his home and place of business and suffered adverse health effects, including eye, nose, and throat irritation, headaches, dizziness, and respiratory difficulty. His respiratory symptoms persisted in the weeks following his initial exposure, and on July 2, 2026, Mr. Ashcraft was treated at Beverly Hospital for shortness of breath. Mr. Ashcraft has also suffered economic loss, including lost personal income, as a direct and proximate result of the closure of SoulMex's business operations. Plaintiff Ashcraft brings this action individually and as a proposed representative of the Business Class defined below. Plaintiff Ashcraft is a citizen of the State of California.

8. Plaintiff SoulMex, LLC ("SoulMex") is a California limited liability company that operates a mobile food-truck business based at and regularly operating from 975 South Atlantic Boulevard, East Los Angeles, California 90022, and frequently serving customers at the corner of Atlantic Boulevard and Verona Street — both locations within the geographic area affected by the fire's toxic smoke, ash, and airborne chemical particulates. SoulMex has operated in the area for approximately one year. SoulMex's sole member is Plaintiff Eric Ashcraft, a citizen of the State of California. As a direct result of the fire, SoulMex's operations were exposed to smoke, ash, and chemical odors and residue, and SoulMex has been unable to resume normal business operations, remaining closed since the fire and continuing to lose income as a result. Plaintiff SoulMex brings this action individually and as a proposed representative of the Business Class defined below. For purposes of diversity jurisdiction, SoulMex, LLC is a citizen of the State of California, the state of citizenship of its sole member.

### *Defendants*

### Defendant 1: Lineage Logistics Holdings, LLC ("Lineage")

9. Lineage Logistics Holdings, LLC is a Delaware limited liability company with a principal place of business at 46500 Humboldt Drive, Novi, Michigan 48377. Lineage is the "principal operating subsidiary" of Lineage OP, LP, a Maryland limited

-4-

COMPLAINT FOR MONETARY DAMAGES

partnership (the "Operating Partnership"), which is a direct subsidiary of Lineage, Inc. (NASDAQ: LINE), a Maryland corporation headquartered in Novi, Michigan. Lineage occupies the Facility as tenant-operator under a lease with Chill Build and subleases the rooftop to Los Palos.

10. **LLC Citizenship:** For diversity purposes, an LLC is a citizen of every state of which any of its members is a citizen. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); see also *Americold Realty Trust v. ConAgra Foods, Inc.*, 577 U.S. 378 (2016). On information and belief, the members of Lineage Logistics Holdings, LLC are: (a) Lineage OP, LP, a Maryland limited partnership and the managing member, whose general partner is Lineage, Inc., a Maryland corporation with a principal place of business in Michigan; (b) BG Lineage Holdings, LLC, a Delaware LLC managed by Bay Grove Management Company, LLC, whose sole managing member is Bay Grove Capital Group LLC; and (c) BG Maverick, LLC, a Delaware LLC holding non-controlling units. On information and belief, no member of Lineage Logistics Holdings, LLC is a citizen of the State of California; its members' citizenship traces to Maryland, Michigan, and Delaware. Lineage may be served through its registered agent for service of process in California.

**Defendant 2: Chill Build Los Angeles I, LLC ("Chill Build")**

11. Chill Build Los Angeles I, LLC owns the real property and building located at 1400 South Los Palos Street, Los Angeles, California 90023. On information and belief, Chill Build is organized under the laws of Delaware and maintains a principal place of business at 6831 East 32nd Street, Suite 300, Indianapolis, Indiana. Lineage has publicly identified Chill Build as the Facility's owner, and LAFD Chief Jaime Moore confirmed that the building would be returned to "Lineage and the property owner" following extinguishment, distinguishing the tenant-operator from the fee owner.

12. **LLC Citizenship:** On information and belief, Chill Build is not organized under the laws of California and its principal place of business is not in California. The citizenship of Chill Build's individual members has not been fully ascertained from

COMPLAINT FOR MONETARY DAMAGES

publicly available records and remains subject to confirmation through further investigation and, if necessary, jurisdictional discovery; on information and belief, no member of Chill Build is a citizen of the State of California.

**Defendant 3: Los Palos Street Operating, LLC ("Los Palos")**

13.   Los Palos Street Operating, LLC is a wholly-owned subsidiary of Altus Power, Inc. (NYSE: AMPS), a Delaware corporation with a principal place of business at 2200 Atlantic Street, Sixth Floor, Stamford, Connecticut 06902. Los Palos owns and operates the rooftop solar array installed on the Facility and engaged Pearce Services, LLC to test that array on or about June 17, 2026.

14.   LLC Citizenship: On information and belief, the sole member of Los Palos Street Operating, LLC is Altus Power, Inc., a Delaware corporation with a principal place of business in Connecticut, or an intermediate wholly-owned Delaware holding company. Altus Power's principal operating subsidiaries identified in its SEC filings are incorporated in Delaware. On information and belief, Los Palos is therefore a citizen of Delaware and Connecticut for diversity purposes and is not a citizen of California. Los Palos may be served through its registered agent for service of process in California.

**Defendant 4: Pearce Services, LLC ("Pearce")**

15.   Pearce Services, LLC was founded in 1998 and historically headquartered in Paso Robles, California, before its acquisition by CBRE Group, Inc. (NYSE: CBRE) in November 2025 for approximately $1.2 billion. On information and belief, Pearce is organized under the laws of Delaware and, notwithstanding the CBRE acquisition, continues to maintain offices at 1222 Vine Street, Paso Robles, California. CBRE Group, Inc. is a Delaware corporation with principal executive offices at 2121 North Pearl Street, Suite 300, Dallas, Texas 75201. Pearce provides design, engineering, maintenance, and repair services for renewable energy generation and storage systems, including rooftop solar arrays, and was engaged by Los Palos to test the rooftop solar array at the Facility on June 17, 2026 — testing believed to have ignited the fire.

-6-

COMPLAINT FOR MONETARY DAMAGES

16.    **LLC Citizenship — Critical Issue:** Although Pearce continues to maintain a business presence in California, an LLC's citizenship for diversity purposes turns on the citizenship of its members, not on where the LLC's offices or principal place of business happen to be located. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). On information and belief, following the November 2025 CBRE acquisition, the sole member of Pearce Services, LLC is CBRE Group, Inc. or an intermediate wholly-owned CBRE subsidiary, each incorporated in Delaware with operations centered in Texas. On information and belief, Pearce is therefore a citizen of Delaware and Texas for diversity purposes and is not a citizen of California. Plaintiffs reserve the right to supplement these allegations upon confirmation of Pearce's post-acquisition operating agreement and membership structure. Pearce may be served through its registered agent for service of process in California.

**Does 1 through 50**

17.    Does 1 through 50 are sued under fictitious names. Their true names and capacities are unknown to Plaintiffs. Does may include: (a) subcontractors or field technicians who conducted the solar array testing on June 17, 2026; (b) manufacturers, distributors, or installers of the solar panels, lithium-ion battery systems, or refrigeration equipment; (c) any other contractor present on the roof of the Facility that day; and (d) predecessor or affiliate entities with responsibility for the Facility or the solar array. Plaintiffs will amend this Complaint to allege the true names and capacities of the Doe defendants when ascertained.

## JURISDICTION AND VENUE

### *Primary Basis: Class Action Fairness Act, 28 U.S.C. § 1332(d)*

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act, or "CAFA"). CAFA jurisdiction exists because: (a) the aggregate amount in controversy among all members of the proposed Classes exceeds $5,000,000, exclusive of interest and costs — the putative Classes encompass thousands of residents, property owners, and businesses across multiple densely populated Southern

-7-

COMPLAINT FOR MONETARY DAMAGES

California counties, and the aggregate exposure in comparable industrial fire and toxic release class actions has substantially exceeded that threshold; (b) the putative Classes consist of well more than 100 members, as the SCAQMD advisories covered an area encompassing millions of residents and thousands of businesses; and (c) at least one member of the putative Classes — including named Plaintiffs Daniel Meraz, Eric Ashcraft, and SoulMex, LLC, each a citizen of California — is a citizen of a state different from at least one Defendant. Every Defendant is, on information and belief, a citizen of Delaware, Maryland, Michigan, Connecticut, and/or Texas. Minimal diversity under CAFA is satisfied.

### *Alternative Basis: Complete Diversity, 28 U.S.C. § 1332(a)*

19. In the alternative, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Complete diversity exists between Plaintiffs — Daniel Meraz, Eric Ashcraft, and SoulMex, LLC, each a citizen of California — and all Defendants. No Defendant, tracing through its members, is a citizen of California. The citizenship of each Defendant is summarized below:

| Defendant | Type | Org. State | PPB / Member Citizenship |
|---|---|---|---|
| Lineage Logistics Holdings, LLC | LLC | Delaware | Members trace to Lineage, Inc. (Maryland corp., PPB Michigan) and Bay Grove-affiliated entities (Delaware). No California citizen. |
| Chill Build Los Angeles I, LLC | LLC | Delaware (on information and belief) | PPB Indianapolis, Indiana (on information and belief). Member citizenship subject to confirmation; on information and belief, no California citizen. |

COMPLAINT FOR MONETARY DAMAGES

| Defendant | Type | Org. State | PPB / Member Citizenship |
|---|---|---|---|
| Los Palos Street Operating, LLC | LLC | Delaware (on information and belief) | Sole member traces to Altus Power, Inc. (Delaware corp., PPB Stamford, CT). No California citizen. |
| Pearce Services, LLC | LLC | Delaware (on information and belief) | PPB remains Paso Robles, CA, but post-acquisition sole member traces to CBRE Group, Inc. or a subsidiary (Delaware corp., PPB Dallas, TX). Member citizenship — not PPB — controls; subject to confirmation of post-acquisition operating agreement. |

20.     The amount in controversy as to each named Plaintiff, considered individually, exceeds $75,000, exclusive of interest and costs. For Plaintiff Meraz, this reflects loss of use and enjoyment of property, past and future medical expenses, and compensatory and punitive damages recoverable under the causes of action alleged herein. For Plaintiffs Ashcraft and SoulMex, this reflects lost business income and continuing business interruption, diminution in the value of SoulMex's business, Mr. Ashcraft's past and future medical expenses, and compensatory and punitive damages recoverable under the causes of action alleged herein.

21.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, and the Facility is located within this District at 1400 South Los Palos Street, Los Angeles, California 90023.

-9-

COMPLAINT FOR MONETARY DAMAGES

## FACTUAL BACKGROUND

### *The Facility and the Parties' Respective Roles*

22.    The Facility at 1400 South Los Palos Street in the Boyle Heights neighborhood of Los Angeles is an approximately 500,000-square-foot cold-storage and blast-freezing warehouse. At the time of the fire, it held approximately 85 million pounds of frozen food and was equipped with an industrial ammonia-based refrigeration system and lithium-ion battery-powered equipment.

23.    Chill Build is the fee owner of the real property and building. As landlord, Chill Build leased the Facility to Lineage and was responsible for the premises, its structural and fire-safety systems, and the activities of contractors it permitted on the property.

24.    Lineage occupied the Facility as tenant-operator, running the cold-storage and blast-freezing operation and maintaining the ammonia-based industrial refrigeration system. Lineage also leased the roof of the building to Los Palos for the installation and operation of a rooftop solar array.

25.    Los Palos, a subsidiary of Altus Power, owned and operated the rooftop solar array installed across substantially the entire 500,000-square-foot roof of the Facility and was responsible for the array's maintenance, repair, testing, and safe operation.

26.    Pearce, a subsidiary of CBRE Group, was engaged by Los Palos to test the rooftop solar array. Pearce's business includes design, engineering, maintenance, and repair of renewable energy generation and storage systems. Pearce was performing solar array testing on the afternoon of June 17, 2026, when the fire ignited.

### *The Prior 2024 Fire — Notice of the Hazard*

27.    A prior fire occurred at the Facility in 2024, caused by an electrical problem involving the rooftop solar panels. That fire was confined to a portion of the panels and was extinguished using ladder trucks and hand lines. This prior incident placed every Defendant on actual notice of the specific fire hazard created by the solar array installed

-10-

COMPLAINT FOR MONETARY DAMAGES

on this building, including the risk that electrical or maintenance activity on the array could ignite a fire in or near the structure's dense polyurethane foam insulation.

### The June 17, 2026 Fire

28. On June 17, 2026, at approximately 2:30 p.m., a fire broke out on the roof of the Facility during solar array testing conducted by Pearce and/or its subcontractors. The fire rapidly escalated into a massive industrial blaze that burned for approximately a week.

29. Lineage has publicly stated that it "believe[s] the fire originated on the roof . . . while the company's subcontractors were servicing the solar array" and that "the fire started on the roof when the owner of the solar array, Altus Power, was doing tests." Los Palos has stated that "[t]he cause of the fire where our rooftop solar array is located at the Los Palos Street facility has yet to be determined," while confirming that it is cooperating with investigators.

30. The Facility's construction — corrugated steel exterior walls filled with dense polyurethane foam insulation — made the fire extraordinarily difficult to extinguish. LAFD Chief Jaime Moore described the structure as "like a giant cooler." Firefighting efforts required LAFD to source high-powered water cannons, deploy helicopters for repeated water drops, and use heavy equipment to breach sections of the building's walls for access.

### Toxic Releases

31. The fire caused the release of multiple identified toxic substances into the surrounding community:

32. **Ammonia:** The Facility's industrial refrigeration system used ammonia as a refrigerant. An ammonia leak developed inside the building after the fire broke out. Lineage subsequently confirmed that it "proactively pumped out the ammonia and transported it offsite," confirming the scope of the ammonia release during the incident.

33. **Hydrogen Fluoride:** On approximately June 19, 2026, LAFD personnel measured fumes at the Facility and detected hydrogen fluoride — a highly corrosive and toxic substance generated as a byproduct of burning lithium-ion batteries present at the

-11-

COMPLAINT FOR MONETARY DAMAGES

Facility. Exposure to hydrogen fluoride can cause severe respiratory, ocular, and dermal injury.

34. **Polyurethane Combustion Byproducts:** The dense polyurethane foam insulation lining the building's walls burned throughout the multi-day fire, releasing toxic volatile organic compounds. The East Yards Coalition for Environmental Justice publicly raised concerns about these releases.

35. **PM2.5 Particulate Matter:** SCAQMD air monitoring showed fine particulate matter (PM2.5) levels reaching "Unhealthy for Sensitive Groups" to "Very Unhealthy" air-quality categories across a wide geographic area over multiple days.

***Regulatory Response and Geographic Scope***

36. On approximately June 20, 2026, both the City of Los Angeles (Mayor Karen Bass) and the State of California (Governor Gavin Newsom) declared states of emergency in connection with the fire. The Los Angeles County Board of Supervisors ratified an emergency declaration on approximately June 23, 2026.

37. Local authorities issued a shelter-in-place order for the community immediately surrounding the Facility. SCAQMD separately issued a particle pollution advisory covering central Los Angeles County, the San Gabriel Valley, the East San Fernando Valley, and Northwest San Bernardino Valley, extended multiple times as the fire continued to burn; SCAQMD sensors recorded "Very Unhealthy" PM2.5 concentrations throughout Boyle Heights on multiple days.

38. The Los Angeles Unified School District relocated multiple Boyle Heights-area schools because of air-quality concerns. Residents throughout Boyle Heights, East Los Angeles, and surrounding communities reported plastic and chemical odors, throat irritation, watering eyes, and difficulty breathing throughout the fire.

39. The fire's economic impact extended well beyond the immediate shelter-in-place zone. Businesses throughout the surrounding area — including SoulMex's mobile food operation based in East Los Angeles, roughly a mile and a half from the Facility — were forced to suspend or curtail operations because of the fire, the resulting smoke and

COMPLAINT FOR MONETARY DAMAGES

ash conditions, and the associated public-safety response. For some businesses, including SoulMex, that closure has continued for weeks and remains ongoing as of the filing of this Complaint.

### CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following proposed Classes and Subclasses:

**Resident Class:** All natural persons who, between June 17, 2026 and the date of full containment of the fire, resided within the geographic area subject to the shelter-in-place order and/or the SCAQMD particle pollution advisory issued in connection with the fire, including the block on which Plaintiff Meraz resides, and who suffered damages as a result, including physical harm, loss of use and enjoyment of property, or related harm.

**Business Class:** All business entities, and the owners of such entities, that operated a business within the geographic area subject to the shelter-in-place order and/or the SCAQMD particle pollution advisory issued in connection with the fire, including Plaintiffs Eric Ashcraft and SoulMex, LLC, and that suffered business interruption, lost revenue, closure, or related economic loss as a result of the fire and the associated emergency response measures.

**Property Damage Subclass:** All members of the Resident Class and/or Business Class who owned real property within a distance to be determined by plume modeling and expert analysis of the Facility, and whose property sustained physical damage from soot, chemical deposition, or other airborne contaminants generated by the fire.

**Medical Monitoring Subclass:** All members of the Resident Class and/or Business Class who resided or worked within a distance to be determined of the Facility during the fire and were exposed to toxic substances, including hydrogen fluoride and/or ammonia, above background levels, and who have not yet manifested compensable disease but face a significantly increased risk of latent illness as a result.

COMPLAINT FOR MONETARY DAMAGES

41.    **Numerosity:** The putative Resident Class and Business Class each consist of thousands of individuals and business entities, respectively. The SCAQMD advisory area and shelter-in-place zone span a significant portion of the Boyle Heights neighborhood and surrounding communities. Joinder of all members of each Class is impracticable. Fed. R. Civ. P. 23(a)(1).

42.    **Commonality:** Questions of law and fact common to the Resident Class and Business Class include, without limitation: (a) whether Defendants were negligent in connection with the solar array testing and the resulting fire; (b) whether Defendants breached their respective duties as premises owner, tenant-operator, solar array owner, and/or solar contractor; (c) whether Defendants violated statutes, ordinances, or regulations designed to prevent fires and hazardous releases of the kind that occurred here, such that they are negligent as a matter of law; (d) whether Defendants' conduct caused the release of toxic substances, including ammonia, hydrogen fluoride, and polyurethane combustion byproducts; (e) whether the physical intrusion of those substances onto Class members' properties constitutes trespass; (f) whether Defendants' conduct constituted a private and/or public nuisance; (g) whether Lineage's operation of a large-scale ammonia refrigeration system in a densely populated neighborhood constitutes an ultrahazardous activity; (h) whether the 2024 prior fire placed Defendants on notice of the hazard that caused the June 17, 2026 fire; (i) the geographic scope of the area affected; (j) the nature, concentration, and health effects of the toxic substances released, and whether medical monitoring is warranted; (k) whether Business Class members were required to cease or curtail operations as a result of Defendants' conduct and the resulting shelter-in-place order and/or SCAQMD advisories; and (l) the appropriate measure of damages. Fed. R. Civ. P. 23(a)(2).

43.    **Typicality:** Plaintiffs' claims are typical of the claims of their respective Classes. Plaintiff Meraz suffered the same types of harm as other Resident Class members, and Plaintiffs Ashcraft and SoulMex suffered the same types of harm as other Business

COMPLAINT FOR MONETARY DAMAGES

Class members, all arising from the same events and the same conduct by Defendants. Fed. R. Civ. P. 23(a)(3).

44. **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of their respective Classes. No Plaintiff has any interest antagonistic to those of the Class he, she, or it represents. Plaintiffs have retained counsel experienced in complex environmental and mass tort class action litigation. Fed. R. Civ. P. 23(a)(4).

45. **Predominance and Superiority:** The common questions of law and fact identified above predominate over individual questions. Defendants' conduct, the toxic releases, and the geographic scope of their impact are susceptible to common proof through air quality data, regulatory records, LAFD measurements, expert plume modeling, and property and business-interruption records. A class action is superior to individual actions because individual damages may be insufficient to justify separate litigation for many Class members, and judicial economy is best served by consolidated adjudication. Fed. R. Civ. P. 23(b)(3).

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### *Negligence*

(Against All Defendants)

46. Plaintiffs incorporate and reallege all foregoing paragraphs as though fully set forth herein.

47. Each Defendant owed a duty of care to Plaintiffs and Class members: (a) Chill Build, as property owner, owed a duty to maintain the premises in a reasonably safe condition and to ensure that contractor activity it permitted on its property did not create unreasonable fire risks; (b) Lineage, as tenant-operator, owed a duty to safely operate the Facility, to oversee contractors working on property within its control, and to prevent the release of hazardous substances; (c) Los Palos, as solar array owner, owed a duty to maintain the array safely and to ensure that any testing was conducted without creating fire hazards; and (d) Pearce, as the testing contractor, owed a duty to perform its work

COMPLAINT FOR MONETARY DAMAGES

with the care and skill of a reasonably competent solar services contractor and to prevent the ignition of fire during testing operations.

48.    Each Defendant breached its respective duty by, among other things: (a) failing to implement adequate fire-prevention measures during solar array testing on an active industrial facility; (b) failing to ensure that testing was conducted safely given the presence of an ammonia refrigerant system, lithium-ion batteries, and dense combustible polyurethane foam insulation; (c) failing to have adequate fire-suppression systems in place and operational during high-risk testing activity; (d) failing to coordinate adequately among themselves and with co-contractors regarding fire risk; (e) failing to investigate or remediate the fire risk identified by the 2024 prior fire at the same Facility; and (f) failing to prevent the escape of ammonia, hydrogen fluoride, and other toxic substances.

49.    As a direct and proximate result of each Defendant's negligence, Plaintiffs and Class members suffered injury, including property damage, loss of use and enjoyment of property, diminution in property value, health impacts from toxic exposure, business interruption and other economic losses, and emotional distress.

## SECOND CAUSE OF ACTION

### *Negligence Per Se*

(Against All Defendants; Cal. Evid. Code § 669)

50.    Plaintiffs incorporate and reallege all foregoing paragraphs as though fully set forth herein.

51.    Evidence Code section 669 establishes a presumption that a party failed to exercise due care where: (a) the party violated a statute, ordinance, or regulation; (b) the violation proximately caused injury to person or property; (c) the injury resulted from an occurrence the statute, ordinance, or regulation was designed to prevent; and (d) the injured person was among the class of persons the statute, ordinance, or regulation was designed to protect. *Ramirez v. Nelson*, 44 Cal. 4th 908, 918 (2008).

52.    On information and belief, Defendants violated statutes and regulations enacted to protect persons such as Plaintiffs and the Class, including, without limitation:

-16-

COMPLAINT FOR MONETARY DAMAGES

(a) the California Fire Code, governing fire prevention and the safe performance of work creating a risk of fire; (b) the California Accidental Release Prevention Program, Health & Safety Code §§ 25531–25543.3 and its implementing regulations at Title 19 of the California Code of Regulations, requiring facilities that handle regulated substances such as anhydrous ammonia above threshold quantities to prepare and implement risk-management and accidental-release-prevention programs; (c) the Hazardous Materials Business Plan requirements, Health & Safety Code §§ 25500–25520, requiring handlers of hazardous materials above threshold quantities to prepare, submit, and implement a business plan addressing emergency response, training, and reporting of releases; and (d) the Cal/OSHA General Duty Clause and General Industry Safety Orders, Labor Code § 6400 and Title 8 of the California Code of Regulations §§ 3200 et seq., requiring employers to furnish a safe place of employment and to maintain equipment in safe operating condition.

53.     Each of the foregoing statutes and regulations was enacted to protect persons such as Plaintiffs and the Class — residents, occupants, and businesses in proximity to a facility storing hazardous and combustible materials and at which work creating a risk of fire is performed — from the precise type of harm that occurred here: an industrial fire and the resulting release of toxic smoke, ammonia, and hydrogen fluoride. The 2024 prior fire at the same Facility gave every Defendant actual notice of the specific hazard that these statutes and regulations were designed to prevent.

54.     Defendants' violations of the foregoing statutes and regulations were a direct, legal, and proximate cause of the fire and the resulting injuries and damages to Plaintiffs and the Class, and Defendants' conduct therefore constitutes negligence as a matter of law pursuant to Evidence Code section 669.

**THIRD CAUSE OF ACTION**

***Premises Liability***

(Against Chill Build Los Angeles I, LLC and Lineage Logistics Holdings, LLC)

-17-

COMPLAINT FOR MONETARY DAMAGES

55. Plaintiffs incorporate and reallege all foregoing paragraphs as though fully set forth herein.

56. Chill Build, as owner of the Facility, and Lineage, as the tenant in possession and control of the Facility, owed a duty of care to Plaintiffs and Class members as persons who could foreseeably be harmed by unsafe conditions at the Facility, including persons and businesses located off the premises. See *Kesner v. Superior Court*, 1 Cal. 5th 1132 (2016).

57. Chill Build and Lineage knew or should have known of the fire hazards created by the combination of a rooftop solar array undergoing testing, an ammonia refrigerant system, lithium-ion batteries, and dense polyurethane foam insulation — particularly given the 2024 prior fire at the same location involving the same solar installation.

58. Chill Build and Lineage failed to take reasonable measures to address these known hazards, including failing to ensure adequate fire-suppression systems were in place, failing to require appropriate fire-safety precautions during solar array testing, and failing to remediate the hazards identified by the 2024 fire.

59. As a direct and proximate result, Plaintiffs and Class members suffered the damages alleged herein.

**FOURTH CAUSE OF ACTION**

***Trespass***

(Against All Defendants)

60. Plaintiffs incorporate and reallege all foregoing paragraphs as though fully set forth herein.

61. Plaintiffs and Class members are owners and/or lawful occupants of real property, including business premises, within the area affected by the fire's toxic emissions.

62. Defendants' negligent and/or reckless conduct caused the physical intrusion of toxic and harmful substances — including hydrogen fluoride, ammonia, polyurethane

-18-

COMPLAINT FOR MONETARY DAMAGES

combustion byproducts, and fine particulate matter — onto the real property of Plaintiffs and Class members without their consent.

63. Under California law, the physical invasion of property by smoke, soot, particulates, and chemical compounds constitutes trespass. *San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893, 936 (1996); *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125 (1991). The intrusion of hydrogen fluoride and other identified toxic compounds, as confirmed by LAFD measurements, constitutes a particulate invasion beyond mere nuisance and supports a trespass claim.

64. As a direct and proximate result of this trespass, Plaintiffs and Class members suffered physical contamination of their properties, loss of use and enjoyment, diminution in property value, and related harm.

## FIFTH CAUSE OF ACTION

### *Private Nuisance*

(Against All Defendants)

65. Plaintiffs incorporate and reallege all foregoing paragraphs as though fully set forth herein.

66. Defendants' conduct in causing or permitting the release of toxic smoke, gases, and particulate matter constituted a substantial and unreasonable interference with Plaintiffs' and Class members' use and enjoyment of their properties, within the meaning of California Civil Code §§ 3479 and 3480.

67. The interference was substantial in that it caused actual harm — toxic chemical exposure, property contamination, loss of use, disruption of daily activities and business operations, and physical symptoms — and unreasonable in that it exceeded ordinary levels of inconvenience attributable to neighboring industrial land use.

68. Plaintiffs and Class members did not consent to this interference, and the harm caused is not a necessary consequence of lawful activity. As a direct and proximate result, Plaintiffs and Class members suffered the damages alleged herein.

COMPLAINT FOR MONETARY DAMAGES

## SIXTH CAUSE OF ACTION

### *Public Nuisance*

(Against All Defendants)

69.    Plaintiffs incorporate and reallege all foregoing paragraphs as though fully set forth herein.

70.    Defendants' conduct unreasonably interfered with rights common to the public at large — including the right to breathe clean air, to use public spaces and streets, and to inhabit and operate homes and businesses free from hazardous chemical contamination — across a geographic area encompassing millions of residents in multiple counties. Cal. Civ. Code §§ 3479, 3480.

71.    The public nuisance affected a substantial and discrete portion of the public, and the California Governor, the City of Los Angeles, and the County of Los Angeles all declared states of emergency in recognition of the widespread public harm.

72.    Plaintiffs and Class members suffered special damages distinct from the harm suffered by the general public, including physical damage to and contamination of their property, documented health impacts, and, for Plaintiffs Ashcraft and SoulMex and other Business Class members, the specific and substantial economic loss of forced business closure and lost income — entitling them to bring this claim as an individual action. Cal. Civ. Code § 3493.

## SEVENTH CAUSE OF ACTION

### Strict Liability for Ultrahazardous Activity

(Against Lineage Logistics Holdings, LLC)

73.    Plaintiffs incorporate and reallege all foregoing paragraphs as though fully set forth herein.

74.    California recognizes strict liability, without regard to fault, for injuries and property damage proximately caused by an ultrahazardous or abnormally dangerous activity. *Luthringer v. Moore*, 31 Cal. 2d 489 (1948). Whether an activity is ultrahazardous

-20-

COMPLAINT FOR MONETARY DAMAGES

is a question of law, assessed under the factors set forth in the Restatement (Second) of Torts §§ 519–520.

75.    Lineage's operation of a large-scale industrial ammonia refrigeration system at the Facility, in the midst of a densely populated residential and commercial neighborhood, constitutes an ultrahazardous activity as a matter of law: (a) industrial-scale anhydrous ammonia stored under pressure presents a high degree of risk of harm if released, as the June 17, 2026 fire demonstrated; (b) the harm from such a release is likely to be great, given the population density of Boyle Heights; (c) the risk cannot be eliminated through the exercise of reasonable care alone, as illustrated by the 2024 fire and the recurrence of a rooftop ignition event less than two years later; (d) large-scale industrial ammonia refrigeration is not a matter of common usage by the public; (e) the location of this activity, immediately adjacent to homes, schools, and businesses, is inappropriate to the risk it poses; and (f) the value of Lineage's cold-storage operation to the community does not outweigh the danger it poses to the health and property of the surrounding population.

76.    Lineage is strictly liable for all harm to Plaintiffs and the Class proximately caused by the storage and use of ammonia at the Facility, regardless of the presence or absence of negligence. As a direct and proximate result, Plaintiffs and Class members suffered the damages alleged herein.

## EIGHTH CAUSE OF ACTION

### *Medical Monitoring*

(Against All Defendants; on Behalf of the Medical Monitoring Subclass)

77.    Plaintiffs incorporate and reallege all foregoing paragraphs as though fully set forth herein.

78.    California law recognizes the right of a plaintiff who has been significantly exposed, through the tortious conduct of another, to a hazardous substance to recover the reasonable cost of periodic medical examinations necessary to detect the onset of latent physical harm. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1009 (1993).

-21-

COMPLAINT FOR MONETARY DAMAGES

79.    As a result of Defendants' conduct alleged in the preceding causes of action, members of the Medical Monitoring Subclass were significantly exposed to toxic smoke, ash, and particulate matter containing ammonia, hydrogen fluoride, and other hazardous combustion byproducts with known acute respiratory, ocular, dermal, and mucous-membrane toxicity, and with potential associations to additional latent disease processes.

80.    As a proximate result of that exposure, members of the Medical Monitoring Subclass face a significantly increased risk of developing serious latent disease, including chronic respiratory conditions. Periodic diagnostic medical examinations are reasonable and necessary to permit early detection of such disease, and the monitoring regime warranted by this exposure differs from that normally recommended in its absence.

81.    Plaintiffs and the Medical Monitoring Subclass are entitled to recover the present-value reasonable cost of a court-supervised medical monitoring program providing periodic diagnostic examinations necessary to detect the onset of physical harm associated with their exposure, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all Class members, respectfully request that this Court:

1.    Certify this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); designate Plaintiff Daniel Meraz as Class Representative for the Resident Class; designate Plaintiffs Eric Ashcraft and SoulMex, LLC as Class Representatives for the Business Class; and appoint Plaintiffs' counsel as Class Counsel;

2.    Enter judgment against all Defendants for compensatory damages, including: (a) physical damage to property from chemical deposition, soot, and toxic particulates; (b) costs of investigation, testing, and remediation of property contamination; (c) diminution in property value; (d) loss of use and enjoyment of property; (e) business interruption, lost income, and other economic losses; and (f) personal injury damages for documented health impacts;

-22-

COMPLAINT FOR MONETARY DAMAGES

3. Enter judgment for a medical monitoring fund for the benefit of the Medical Monitoring Subclass, sufficient to fund appropriate monitoring for latent health effects, as permitted under *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993);

4. Award punitive damages against each Defendant to the extent permitted by law, including based on Defendants' knowledge of the fire risk demonstrated by the 2024 fire at the Facility and their failure to adequately address that risk before June 17, 2026;

5. Award injunctive or equitable relief requiring environmental testing and remediation of contaminated properties within the Class area;

6. Award pre- and post-judgment interest at the maximum rate permitted by law;

7. Award reasonable attorneys' fees and litigation costs pursuant to applicable law, including California Code of Civil Procedure § 1021.5 (private attorney general doctrine); and

8. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

Dated:  July 8, 2026                                **MCCUNE LAW GROUP, APC**


                                                    By:    */s/ Michele M. Vercoski*
                                                           Michele M. Vercoski
                                                           Richard D. McCune
                                                           Joshua A. Genzuk
                                                           Yasmin N. Younessi
                                                           Attorneys for Plaintiff and Class

COMPLAINT FOR MONETARY DAMAGES